Very good, your honor. Let me know if I need to slow it down. Good morning. My name is Colin Stevens. I represent the appellant Gregory Boyd. May it please the court. In the original trial in Mr. Boyd's case, the government used testimony from three cooperating witnesses to testify about 404B evidence. The purpose of that evidence was to bolster the case that Boyd there were drugs in the car at the time he was stopped and that formed the basis of the trial that he was facing. Those three witnesses were absolutely critical to the government's case. The government presented these witnesses essentially to show that Boyd was not only possessed drugs on that day but that he must have known he possessed drugs on that day because of this chain of inference that of his interactions with a gentleman named Fritz Anderson. Essentially these witnesses, at least two of the three of them, portrayed Mr. Boyd as at least on occasion acting as the bag man for Mr. Anderson. The 404B instruction was read but the evidence itself was somewhat tenuous to the offenses of conviction. But what the government did, as I indicated, is it forged this chain of inference between what Mr. Boyd was charged with and what Mr. Boyd was alleged to have done by the testimony of these three 404B witnesses. Later it turns out that the government did not disclose impeachment evidence pertaining to those three witnesses in relation to a letter that went out by the U.S. Attorney's Office to a good many defendants in the District of Montana. It was reviewed that the government had withheld evidence relating to these three witnesses and that in fact was a Brady Giglio violation. The district court in this case erred when it applied 2255H1 to the facts of this petition rather than the traditional Brady analysis. Counsel, could we start there? May I, forgive me for interrupting, but what if we didn't apply a heightened standard? What's your best shot at a Brady claim? What I'm going to call a vanilla Brady claim. What's your best shot? And that's fine. The best evidence to establish the materiality of the Brady claim really is the evidence against Witness C. That is to me the monumental one. So you have this recording of Witness C who is frantically trying to get a substantial amount of time off of his sentence. Fifty percent is a lot of time. And so he's running through sort of who can I get and his girlfriend says well let's get the black guy or something along these lines. May I interrupt you? We understand the facts and for my hypothetical I'm going to give you that that's exculpatory because he was trying to come up with somebody to save himself basically as you've described. I'm going to give you that that's exculpatory. It should have been the materiality is that his desperation to save himself and that his inability to come up with more than one black guy beyond Nate. What that does is it supports just his overall inability to not correctly identify Greg Boyd at trial. It significantly undermines his credibility and the district court concluded that. That's why it's exculpatory and that's why it should have been turned over and I'm trying to get to materiality. What's your best shot that the outcome would have differed sir? Because my understanding is that your client's defense was as you said he he had to convince the jury that he didn't know what was in the trunk and he testified himself right? And as the trial court noted there were there were three in particular there were more than three but three that I thought instances that I found significant where the prosecutor is pretty effective at undermining his credibility and and I and I'm just not I want to make sure you have a fair shot at responding to those because I think that makes the materiality problem with Brady really tough for you. I guess I disagree for defense counsel did an amazing job of impeaching all of the witnesses including these three um and I guess where we get to materiality is there is a reasonable probability that the result would have been different is that at the point you come to sever this chain of inference that in my opinion tips the scale of the credibility of the government's case. You have one thumbprint at the hand on the handle of the footlocker bag and you have Mr. Boyd who is also you know effectively impeached but you have these three other witnesses who are also effectively impeached. You have the defense investigator who comes in and says Mr. or excuse me witness C could not identify Mr. Boyd and then on rebuttal witness C comes in and says no no the investigator is essentially lying to you here's what really happened and the materiality is essentially if the jury no longer believes that these three witnesses are credible it severs the inferential chain and supports Boyd's contention that he did not know that the drugs were not only in the trunk but were within two containers in the trunk. So counsel uh with respect to witness C did witness C say anything about the drugs in the trunk? He did not no. Okay did he say anything about Boyd in particular that would lead one to believe that he that Boyd didn't know that there were drugs in the trunk? I mean how far how far does this chain of causality have to go between witness C and your client? Well I your honor I guess if I'm understanding your question the the answer to your question comes in um AUSA Sikora's final portion of his closing where he's talking about his hypothetical granddaughter and how all of these inferences connect to Mr. Boyd and how it's really so simple that his his granddaughter could understand it and I I guess your honor at that point I'm not sure how far it needs to be or how attenuated but it's the fact that the government is using this to to create that chain of inference and frankly I don't think it's very far. Witness C um and the and the other two witnesses the government's case is essentially well he must know that drugs are in the car because here's three people who connect him to Fritz Anderson. Fritz Anderson's a drug dealer and therefore Mr. Boyd must know about all drugs that are anywhere in Billings Montana including his car so I you know I think it's a it is a chain of inference but it's not very long especially the way that the your client did have some contact with Boyd right he said that he paid him 76 thousand dollars in cash in a hotel room is that correct? So yes your honor except my client is Boyd Witness C testified that my client received 70 I think six thousand dollars from Witness C that was destined for Mr. Anderson. Okay so does does is is it your contention that the evidence that was withheld would have undermined C's testimony about the 76 thousand dollars in the hotel room? Absolutely it was Boyd's contention that that never happened and in fact what the what the evidence showed at trial was I believe Witness C's testimony was that this 70 some thousand dollar exchange occurred at a very specific hotel in Billings. During the trial defense counsel produced witnesses to indicate that not only was Witness C who had testified he registered the room in his name he did not rent a room at that hotel in that month let alone on the day that he proclaims that he he paid Mr. Boyd this money for Mr. Anderson. But counsel the three witnesses we're talking about didn't strike me as very strong government witnesses in the first place they're they're it seems like Boyd's brother would have had a much bigger problem with these witnesses than than Boyd. I just want to give you a chance to respond to my concern that his defense because he had to convince the jury he didn't know what was in the trunk did he did he first of all am I right about that or did he have a different defense that he ran at trial any other defense? All right from from my reading of the trial transcript your honor if you're going to his his his defense was I did not know. Right and he testified and he did and so it seems to me that even if they agreed with you that all three of those witnesses weren't credible or they didn't know what they were talking about or maybe even that they were fibbing to get some benefit for their own selves the jury I think saw the defendant testify that he said he hadn't seen the car he for his friend since the day he bought it but they showed proof that he had been ticketed for speeding yes correct? That's correct. Okay so they caught kind of got caught up there and that the one I'm then there's at er 456 457 he says he's never been accused of possessing firearms he was asked that question he said no he had not there's a the transcript shows that the prosecutor showed him a document I can't tell from the transcript what that document is but he his response audibly into the record was those charges were dropped and then at 457 he agrees um he had been charged with possession of firearm in 2002 is do I understand that right? I believe that's correct your honor yes. So he concedes that point the one I'm a little bit shakier on is him denying drug use and then the government brought in the one of the nurses because of course he went into cardiac arrest that night and the toxicology seems to toxicology we've got shows that that that um it was consistent with either either meth or ecstasy so was was the question that he denied use of meth amphetamine or what did he deny in front of the jury? Well it got a little tricky I believe his testimony was that there was meth in his bloodstream but he did not use it I I don't dispute that Mr. Boyer so but the jury heard all that right? Correct. Okay so can I I'm not trying to give you a hard time I'm really sincerely interested we take Brady allegations very seriously and certainly this one where the government has had to come forward and do um I think it's duty to reveal that there's been this problem so you have got our full attention but given this cross-examination it seems to me that even if all of this had been turned over even if the jury decided those other witnesses didn't know what they were talking about at all how can you show materiality for purposes of Brady? Because materiality I think has to be viewed within the totality of the record right I mean you've got if if if the focus is solely on three instances of impeachment where Mr. Boyd was effectively impeached on somewhat collateral matters right he was not impeached on his knowledge of the drugs in the car that's where these three witnesses come in and that's why it's material within the total record. Three instances where Mr. Boyd may have tacked a little too close to the wind on the truth is not sufficient within the totality of the records to to undermine the materiality that but for the Mr. Sikora's withholding of this evidence that this causal chain that he used to tip the scale was material to the overall trial record in this case. What does the undisclosed phone call the jail phone call contribute to the assessment of witness C's credibility? Absolutely. Tell me. Again I think it goes back to his his desperation not only to come up with names his understanding of how the cooperation process works and his inability to come up with more than quote one black guy beyond some individual named Nate. But he didn't name Boyd in that call did he? He did not no but what he did was the fact that he didn't name Boyd is what speaks volumes your honor it's it he he wants as many people he wants to climb this ladder as much as he can and he does not grasp the ring that is Boyd to me that's that is something that a jury should be allowed to consider when evaluating. Forgive me for interrupting but when you're answering Judge Sullivan's question could you factor in that or maybe you are the district court agreed with you on this point she said they wouldn't have they wouldn't have agreed they wouldn't have believed this witness if they had heard that testimony right? That's correct. Right so so that's what she's assuming it should have been the recording should have been turned over for this very reason that Judge Sullivan is pointing out but where does it get you? I think what it does is it gets me to materiality under Brady that the underlying issue in the case is that the district court said okay I mean the district court does not use the word material but essentially what she says is no reasonable juror or few reasonable jurors would have believed witness c but under 2255 h1 I can't use the Brady standard I have to use the actual innocent standard of 2255 h1 and so I'm just going to reserve a little bit of my time if that's all right. Sure. Thank you. We'll hear from opposing counsel please from the government. Thank you your honor may it please the court Tenta Tarka of the district of Montana on behalf of the I'll go right to the the issue of materiality we do think 22 h1 is the proper standard under this court's precedence but this is probably a prime case like the related case of United States versus Maldonado where there is some materiality under either the either standard and I'll go directly to even the United States we have presented our arguments for why we don't believe that counsel counsel can I get you to stop there's a little bit of a delay in your microphone for some reason or in that you know in the transmission so if you can slow down a little bit I think we'll have a better time we're not we can hear you you're loud enough if you could just slow it down a little bit then I think we won't lose anything sure my apologies your honor I'll go directly to to the materiality with respect to witnessing we don't think this is the this is appropriate but even if this court were to throw out witnesses testimony entirely say he was entirely incredible it would not change the affect the reasonable make a reasonable probability of a difference in this case as the court noted the primary evidence here is undisputed the evidence that there was a distribution amount of guns and drugs in in Mr. Boyd's possession in the car that he owned and was driving the only so in order to get around that he had to show that despite possessing it he didn't know it was in the trunk of that car there without even getting to the witnesses the cooperating witnesses there were all the problems with Mr. Boyd's testimony which the court which Judge Kristen walked through and then in addition to that there were the two witnesses cooperating witnesses that for which there was no the court didn't find there to be any withheld impeaching evidence witness a like witness c testified that Boyd collected drug debt from Mr. Anderson witness a didn't suffer from the same problem the witness c did in that he knew both Boyd and Anderson well so there wasn't this identification problem with respect to witness b she testified directly to the fact that Boyd was bragging about bringing drugs up from which increases the inculpatory nature of the drug ledger that was found on on Mr. Boyd and I would note that the the third piece of evidence that the court presumed was was favorable and not disclosed related to hearsay with respect Ms. Jackson the district court expressly found that that made no difference even within the testimony no significant difference even within the testimony of witness b because witness b testified of her own knowledge that Jackson was was dealing the drugs and there was no hearsay issue with respect to her statements with respect to Boyd um uh boy bragging about the bringing the drugs in so even at the lower level of materiality even throwing out uh witness c's testimony entirely as judge christian pointed out there was significant amount of impeaching evidence with respect to uh to witness c in the first place so we're talking about the marginal difference between what was presented in impeachment and what could have been um there's just no reasonable probability of reaching a different result um and that's with respect to to the Brady materiality standard we think that's sufficient for the court to uh to resolve this case but we do believe that the of the 2255 h1 i'm happy to go into that if the court um maybe just quickly the district court relied on brown i think and uh you you filed a 28 j letter suggesting that lopez maybe the 2255 appropriate standard do you want to speak to that well lopez um lopez predates brown um lopez stands for the proposition that a a non-material brady claim uh is not uh doesn't meet the has to meet the 2255 h1 standard and doesn't uh it left open the question of whether a meritorious brady claim would face the same problem brown answers that question well brown answers that hold on brown answers that for 2254 claim where there's a different situation in 2255 where there is no other safety net but i'm going to call a safety net so i'm wondering why we would reach why we would reach brown here when we have published authority from the ninth circuit in the form of lopez but i want to give you a chance to both of you just to answer that i think i think you only you only reach the question of brown if you find that there is a material brady violation uh and so i agree with you you don't need to reach it here um but if you found that there was a material brady violation you would be in a box where you would have to apply brown and i and i do think brown is controlling here um and the best evidence of that is not only the fact that the court did apply it in non-precedential case of bowser but you can look to the 11th circuit case of scott which is actually the most favorable sympathetic case to boyd's position but they were in a similar position where they said um that there was existing circuit precedent with respect to 2254 even though in that case scott disagreed with it they said but we can't there's no principal distinction between applying applying it with respect what what is a second and successive petition uh at the state level versus the federal level but the but the 11th circuit case goes significantly farther than we've gone right doesn't it say that all subsequently filed petitions are necessarily sos or just about that would that would be new law for us too i think counsel that's what i'm do you agree uh new law with respect to 2255 or to make it easier for you because i didn't ask a good question don't you agree that if we were to adopt the 11th circuits holding we would be expanding our own rule it goes farther than we've gone right i think i i think it would be new law in that it would say in a published position that brown applies to 2255s okay but i think the 11th circuit was in the same position there where it had rule precedent with respect to 2254 saying brady claims were second and successive and felt obligated to apply that to the 2255 context let me just check with my colleagues to see if we have any more questions nope i don't think so thank you very much for your argument thank you counsel i think you have uh could you put a minute on the clock please go right ahead thank you your honor um just to deal with your most immediate question about the 11th i think not only would if the court adopts the 11th circuits rationale not only would it be creating new law i think it would be contrary to footnote number five in the brown decision where it does that note leaves open sort of the question of whether a brady claim that's discovered after a petitioner filed his first petition would be an actual second or subsequent under the panetti rationale um i guess to address the the government's reliance on maldonado i was counsel in maldonado's case i think it's factually distinguishable uh from mr boyd's case in that case as the court noted in the memorandum decision uh the brady evidence dealt with one witness who was cumulative and i will end my argument there all right thank you both for your argument we'll take this case under advisement
judges: BYBEE, CHRISTEN, Selna